Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Arizona

_____Phoenix_____ Division

FILED _____ LODGED
_____ RECEIVED _____ COPY

NOV 2 4 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

| | | |
|---|---|---|
| James Lee Williams | ) | Case No. **CV20-02277-PHX-MTL** |
| | ) | |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☐ Yes ☑ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| | ) | |
| David Bernhardt | ) | |
| Secretary of the Interior | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR A CIVIL CASE

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | James Lee Williams |
| Street Address | 137 North 9th Ave |
| City and County | Yuma in Yuma County |
| State and Zip Code | Arizona 85364 |
| Telephone Number | (928)246-1059 |
| E-mail Address | Lrob@roadrunner.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name         David Bernhardt

Job or Title *(if known)*    Secretary of the Interior

Street Address    1849 C Street, N.W.

City and County    Washington, DC

State and Zip Code    20240

Telephone Number

E-mail Address *(if known)*

Defendant No. 2

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

1. 1902 Reclamation Act
2. 1928 Boulder Canyon Act
3. 1931 Boulder Canyon Agreement
4. U.S. Constitution

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual

   The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

   b.    If the plaintiff is a corporation

   The plaintiff, *(name)* _____ , *is incorporated* under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual

   The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

After exhausting all means to resolve this problem, this complaint is filed against the Secretary of the Interior for a solution to a problem that started in 1931 that deprived an African American community of the right to acquire public land that was offered free by the U.S. Government for homestead within the Yuma Reclamation Project.

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Discriminatory policies violated the U.S. Constitution's 5th and 14th Amendments of Equal Protection of the Law and the Rights to acquire property. Request the Secretary withdraw (160) acres public land from Arizona and replace them with U.S. public land in Arizona. I'm requesting the land be deeded to me because I have had control of the land since 1956, and the Bureau of Land Management transferred the land to Arizona in 1983 without compensation or Due Process of the Law violating my Constitutional Rights.

See Attached.

V.    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.    **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    11/21/2020

Signature of Plaintiff

Printed Name of Plaintiff    James Lee williams

B.    **For Attorneys**

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____

11/21/2020

From:  James Lee Williams, 137 North 9th Avenue Yuma, Arizona 85364
To:    United States District Court of Arizona, District of Arizona, Sandra Day
       O'Connor, US Courthouse, 401 West Washington St., Suite 130, SPC 1, Phoenix,
       Arizona 85003

Subj:   The Yuma Reclamation Project & the "Yuma Island"

Ref:   (a).  U.S. Constitution's 5th & 14th Amendment
       (b).  1964 Civil Rights Act
       (c).  1902 Reclamation Act
       (d).  1928 Boulder Canyon Act
       (e).  1931 Boulder Canyon Agreement

Encl:  (1).  Notification of Pending Litigations/SOI David Bernhardt 11/22/19
       (2).  BOR Director Response/Terrance J. Fulp dated 02/26/2020
       (3).  Complaint to Secretary of the Interior Sally M. Jewell/dated 01/25/2016
       (4).  Reclamation Director's Response/Terrance J. Fulp/dated 06/13/2016
       (5).  Freedom of Information Officer letter dated 04/19/2018
       (6).  1931 Boulder Canyon Agreement
       (7).  Secretary of the Interior 1931 Water Deliver Contract
       (8).  Reclamation Office memo 4400-1-17-02
       (9).  Yuma Project 1912 Map
       (10). 1979 Assistant Secretary of the Interior letter
       (11). Arizona Land Department letter dated 2017
       (12). 1974 Yuma Sun's article

In accordance with the references, enclosures (1) thru (12) are submitted to support the facts in this complaint. In 2015, I filed a complaint with the Justice Department for Civil Rights violations within the Yuma Reclamation Project. However, after two years and no action, the first of three federal cases was filed against the Bureau of Reclamation and the Bureau of Land Management in the Court of Federal Claims (CV-17-679C) in May of 2017. Due to Sovereign Immunity protection for federal agencies, the Big Tucker Act was invoked as an exception because federal agencies violated the Constitutional Rights of an African Americans community called the "Yuma Island" during the administration of the Yuma Project.

In 1983, the Bureau of Land Management transferred the land on the Yuma Island to Arizona in a public land exchange without compensation or Due Process of the Law to conceal their past wrong-doings. The land was exchanged to build a desalting plant for public use in Yuma. The African American community ancestors settled on the land and claimed an interest as land owners. The land was withdrawn from Arizona and reserved by the Bureau of Reclamation for the Yuma Reclamation Project and assigned to the North Gila Valley Division.

1

The Yuma Island was settled by African American World War I veterans in the mid-1920s who came to Yuma County to homestead and acquire public land offered by the U.S. government as an incentive to settle the Desert Southwest. However, due to racial discriminatory policies by the Bureau of Reclamation, they were denied the right to apply for homestead and became squatters. In 1931, California was mandated to support 10,000 acres on the Yuma Island with Colorado River water.

The first case was dismissed for time-barred, even though a motion was filed for tolling the Statute of Limitation in accordance with FRCP-9(b) for fraud. The decision in the Trial Court was appealed, confirmed, and a petition to the Supreme Court was denied.

The 2nd complaint was file in the U.S. District Court in Phoenix, Arizona for the fraudulent taking of the water entitlements (public property). The Bureau of Reclamation, the States of Arizona and California, and Metropolitan Water District of Southern California colluded in taking and concealing water authorized for the 10,000 acres on the Yuma Island authorized in the 1931 Boulder Canyon Agreement.

After decades of depriving the black community on the Yuma Island, the Bureau of Reclamation initiated a fraud scheme to transfer the water on paper from the Yuma Island to the Quechan Indian tribe by claiming in paragraph II (D) 5 of the 1964 Supreme Court Decree in Arizona v. California. They claimed that the boundaries on (5) Indian reservations were not determined, even though all of the reservations were surveyed by the U.S. Geological Survey, authorized by the U.S. Congress, and signed by the U.S. President when established.

In 1928, the Boulder Canyon Act authorized 4.4 million acre feet of Colorado River water for California. California Department of Water Resources hired Metro Water District a private corporation to store and distribute water to customers in Southern California. Moreover, the Bureau of Reclamation authorized Metro Water District to sign the Water Delivery Contract with the Secretary of the Interior to receive all of California's reclamation water directly from them.

This arrangement created a Conflict of Interest because Metro Water District is (1) of (7) water districts, and they are a junior party for reclamation water. In the 1931 Boulder Canyon Agreement, Metro Water District was assigned a priority-4 and the Yuma Reclamation Project in California was assigned a priority-2.

The 2nd case was dismissed because Arizona and California invoked the 11th Amendment's Sovereign Immunity protection, even though the claim was for violating the 1964 Civil Right Act, Title VI and Statute 2000d-7 for racial discrimination, which says…States cannot invoke Sovereign Immunity protection when this Act is violated.

The 3rd complaint was filed against (4) federal employees of the Bureau of Reclamation and (2) state employees as follows: 1) Mr. Terrance J. Fulp, the Regional Director of the Bureau of Reclamation, 2) Ms. Margot Selig, the Water Delivery Contract Manager, 3) Ms. Nancy DiDonata, the Water Contract Specialist, and 4) Mr. Aaron A. Alton, the

2

Freedom of Information Officer. The complaint against the federal employees was filed as Blevins claims because they continue to perpetuate and conceal the fraudulent taking of the water rights authorized to support land on the Yuma Island in the 1931 Boulder Canyon Agreement. Even though, it was his job, the Freedom of Information Officer Mr. Aaron A. Alton refused to provide information requested pertaining to land on the Yuma Island.

Mr. Fred Breedlove the Director of Arizona Land Management is complicit in the fraudulent taking of the water rights authorized for land on the Yuma Island because he was entrusted to provide equal protection for all of Arizona's citizens, but he violated the public trust by not requesting enforcement of the 1931 Boulder Canyon Agreement by the Bureau of Reclamation.

Mr. Ron Derma the Bard District water manager in Imperial County, California is complicit in the fraudulent taking of the water rights authorized for land on the Yuma Island that was located in his district. Mr. Derma failed to provide equal protection for the African American community on the Yuma Island, which was his responsibility to support the land with reclamation water.

The Dismissal Order for the 3rd case was based on Arizona's invoking the 11th Amendment Sovereign Immunity protection in the 2nd case as the owner of the land on the Yuma Island. However, the 3rd complaint was filed for the fraudulent taking of the water entitlements that is U.S. public property from the Colorado River within a federal water project. After the case was dismissed, Mr. Derma the Bard District Manager resigned without having to address the subject matter in the complaint.

## Separation of Powers Doctrine

The U.S. Congress violated the Separation of Powers Doctrine by delegating their law making authority to the Bureau of Reclamation in the administration of the Yuma Reclamation Project that resulted in the exclusion of the African American community on the Yuma Island from the Yuma Project. Congress violated the Separation of Powers Doctrine by aiding the Bureau of Reclamation to conceal racial discrimination and biases. They violated Article I of the U.S. Constitution.

The U.S. Supreme Court violated the Separation of Powers Doctrine by deferring to the Bureau of reclamation in making their decisions in the 1964 Supreme Court Decree (Arizona v. California). As a result, the African American community on the Yuma Island was denied the water entitlements authorized in the 1931 Boulder Canyon Agreement and illegally transferred to the Quechan Indian tribe in the 2005 Special Master's Recommendations to the Supreme Court. The Supreme Court actions deprived the black community of reclamation water support. The community was labeled illegal water users. The Supreme Court violated Article III of the U.S. Constitution.

3

Fraud

In 1963, the U.S. Congress authorized redrawing the border between Arizona and California by eliminating the Colorado River.  The land in the 1963 Compact was public land reserved by the Bureau of reclamation for the Yuma Project. The new border was drawn through the middle of the Yuma Island and not along the Colorado River as originally surveyed by the U.S. Geological Survey.  In 1963, the Yuma Island consisted of 9,110 actual acres.  The new Border Compact put 5,000 acres on the right side of the Colorado River in Arizona and 4,110 acres on the west side of the river in California. The majority of the land in California consisted of black Arizona lease holders.

In 1978, the Bureau of Land Management resurveyed the Quechan Indian reservation and enlarged it by (952) acres from land on the Yuma Island reducing the land on the Yuma Island in California to 3,158 acres. The Bureau of Land Management enlarged the Quechan reservation without Congressional authority, and they transferred approximately 3,000 acres on the Yuma Island to Arizona in a public land exchange to build a desalting plant in Yuma without compensation to the African American community.

The 1963 Border Compact didn't repeal the 1931 Boulder Canyon Agreement that authorized enough water to support 10,000 acres on the Yuma Island.  Therefore, California has to support both Arizona and California with reclamation water.  The Bureau of Reclamation has condoned and concealed the illegal taking of the water by Metro Water District.

The Yuma Island Background
Information

In the mid-1920s, African American World War I veterans settled on public land and became squatters due to discriminatory policies by the Bureau of Reclamation.  The land called the "Yuma Island" was reserved by the Bureau of Reclamation for the Yuma Reclamation Project.  Even though, military veterans were authorized priority land rights in the 1862 Homestead Act, the 1902 Reclamation Act, and the 1928 Boulder Canyon Act (section 9), veterans on the Yuma Island were denied the right by the Bureau of Reclamation to apply for homestead.

In 1929, Rufus Dees, an African American, homesteaded (147 acres) within the Yuma Project before the land was reassigned to the Reservation Division of the Yuma Project in California in 1931.  More important, Mr. Dees received his land before California and Metro Water District was mandated by the Secretary of the Interior to support 10,000 acres on the Yuma Island with reclamation water from their annual water allotment in 1931. His homestead was certified by President Calvin Coolidge.

California was mandated to support land on the Yuma Island with water because the Bureau of Reclamation made cuts in the Colorado River channel to relieve flooding in the

4

Bard Unit (white settlers) of the Reservation Division in 1920. The cuts changed the course of the river that divided the North Gila Valley Division (16,000 acres). 10,000 acres was reassigned to the Reservation Division of the Yuma Project in California and 6,000 acres was reassigned to the Gila Reclamation Project in Arizona. Mr. Dees homestead was part of the 6,000 acres in Arizona.

In 1950, John Dees, the son of Rufus Dees settled on the west-side of the river on the Yuma Island in California…land that was once part of the North Gila Valley Division. California never supported the land with water because the Bureau of Reclamation never constructed the water delivery canals as required by the 1902 Reclamation Act. As a result, Metro Water District and the State of California retained 66,700 acre feet of Colorado River authorized for 10,000 acres on the Yuma Island. Today Elmo Dees, the son of John Dees resides on the Yuma Island, and his son Jonathan Dees has taken over managing the family's farm.

Even though, they never received reclamation water through the canal system, they managed to farm the land from wells dug decades ago. The wells on the Yuma Island are recharged from run-off from white farms near by. The water is high in salt content. Therefore, only crops that can with stand salt can be grown.

In 1933, the U.S. Justice Department sent U.S. Attorney Sharpless Walker to eject squatters on the Yuma Island of the Reservation Division, but he reported to the Secretary of the Interior that the squatters were colored people farming the land and nearly all of them were war veterans…who were entitled to priority land rights under the land laws of the time.

The black community remained on the Yuma Island without any further legal action until the early 1960s when the Bureau of Land Management coerced the residents to sign land leases by promising to compensate them for developing the land over the past (30) years. The community was never compensated or allowed to apply for homestead. The 1862 Homestead Act was repealed in 1976, and the African American community was denied the right to acquire the land and the water rights.

In the 1964 Supreme Court Decree, the Court requested that Arizona, California, and the Bureau of Reclamation provide a list of water rights within two years for reconciliation. California Department of Water Resources reported 25,000 acres for the Yuma Project in California, but the Bureau of Reclamation reported 15,000 acres for the Yuma Project in California. Clearly, this was part of the fraud scheme the Bureau of Reclamation started when they reported that the boundaries on (5) Indian reservation were not determined.

The scheme was to justify more water to the Quechan Indian tribe, so that Metro Water District could buy-back the water they have retained and sold since 1931. The 10,000 acre omitted by the Bureau of Reclamation and the variance in the figures was never reconciled. As a result, when the 1979 Supplemental Supreme Court Decree (Arizona v. California) was published it didn't include the 10,000 acres on the Yuma Island, and the black community has been identified as illegal water users.

5

The 10,000 acres not reported by the Bureau of Reclamation in 1968 was documented in the 1931 Boulder Canyon Agreement. In fact, the water delivery contract between the Secretary of the Interior and Metropolitan Water District also included 25,000 acres. The Reservation Division of the Yuma Project in California consisted of 25,000 acres, 15,000 acres (Indian Unit-8,000 acres and the Bard Unit-7,000 acres) and 10,000 acres on the Yuma Island.

The current economic lost to the African American community to support 10,000 acres with reclamation water is $27 million per year (10,000 acres x 6.67 acre feet per acre = 66,700 total acre feet x $400.00 per acre, low market value today). The 1979 Supplemental Decree authorized 6.67 acre foot of water per acre.

## Conclusion

In 1912, the Yuma Reclamation Project consisted of (3) divisions as follows:

1). The Reservation Division with 15,000 acres.

2). The Yuma Valley Division with 52,000 acres.

3). The North Gila Valley Division with 16,000 acres (10K acres on the Yuma Island).

In 1931, California Department of Water Resources established a priority system of (1) thru (7) for the (7) water districts in Southern California as follows:

Priority-1    Palo Verde Irrigation District 104,500 acres

Priority-2    U.S. Bureau of Reclamation 25,000 acres (Yuma Island/10K acres)

Priority-3    Imperial Irrigation District 16,000 acres

Priority-4    Metropolitan Water District (550,000 acre feet of water, Coastal Plains)

Priority-5    Metro Water District (550,000 acre feet, San Diego County)

Priority-6    Coachella Valley and Palo Verde District 16,000 acres

Priority-7    Other Agricultural use

I'm requesting the Secretary of the Interior provide a remedy to an injustice that has been concealed for (7) decades. The African American community was excluded from the Yuma Reclamation Project and the right to acquire the land (160 acre farms) and the water entitlements authorized in the 1931 Boulder Canyon Agreement (66,700 acre feet).

6

I'm requesting the Secretary withdraw all 9,110 acres on the Yuma Island from Arizona and replaced it with U.S. public land in Arizona, resurvey the 9,110 acres to establish (160) acre farms from the original land plats when the land was reserved for the Yuma reclamation Project in 1912 and deed (160) acres to me as owner with water rights from California annual allotment assigned a priority-2.

The U.S. Agricultural Department in Imperial County, California made changes to farm sizes over the years on the Yuma Island by resurveying the land and allowing lease holders to make obituary changes to the number of acres they were leasing, which lead to fraudulent changes to the number of acres per farm. Today, I'm leasing (94) acres from Arizona. That was once (160) acre farm. The actual acreage can be verified by reconciling the acreages when the land was transferred by the Bureau of Land Management to the State of Arizona in 1983 and 1985. This information was requested and denied by the Bureau of Reclamation's Freedom of Information Officer.

The Regional Director, Mr. Terrance J. Fulp as the Administrator of the Yuma Reclamation Project in California violated the public's trust by condoning Metro Water District depriving water support to land on the Yuma Island. Clearly, he is part of the problem and cannot aid in resolving this on-going problem with Metropolitan Water District receiving all of the water each year, and the Bureau of Reclamation deferring to them for a decision about recognizing the land on the Yuma Island as a senior party for water assigned a priority-2 in 1931.

Respectfully Submitted

James Lee Williams
137 North 9th Ave
Yuma, Arizona 85364
(928) 246-1059  Cell

7